Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEATHER NOWAKOWSKI,<br><br>        Plaintiff,<br><br>    v.<br><br>SPRING BANK PHARMACEUTICALS, INC., DAVID ARKOWITZ, TODD BRADY, TIMOTHY CLACKSON, MARTIN DRISCOLL, KURT M. EICHLER, PAMELA KLEIN, and SCOTT SMITH,<br><br>        Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Heather Nowakowski ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Spring Bank Pharmaceuticals, Inc. ("Spring Bank" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger of Spring Bank and F-star Therapeutics Limited ("F-star") (the "Proposed Transaction").

2.      In connection with the Proposed Transaction: (i) Spring Bank will acquire the entire issued and outstanding share capital of F-star; and (ii) each ordinary share of F-star will be sold to Spring Bank in exchange for a number of shares of Spring Bank common stock based on the exchange ratio of 0.5338 (which assumes both that Spring Bank's valuation will not be adjusted as a result of its expected net cash at closing and that F-star raises $25.0 million in the pre-closing financing at a pre-money valuation of at least $35.0 million).

3.      Upon closing of the Proposed Transaction, Spring Bank securityholders and holders of F-star's share capital are expected to own approximately 38.8% and 61.2%, respectively, of the outstanding capital stock of the combined company.

4.      In addition, Spring Bank stockholders will receive two separate and distinct contingent value rights ("CVRs") for each share of Spring Bank common stock held of record as of immediately prior to closing. The CVRs will represent the rights to receive cash payments in connection with (i) certain transactions involving Spring Bank's proprietary STimulator of INterferon Gene ("STING") agonist compound and (ii) certain other transactions involving Spring Bank's proprietary STING antagonist compound.

5.      In order to convince Spring Bank shareholders to vote in favor of the Proposed Transaction, on September 30, 2020, Defendants caused to be filed with the SEC a materially incomplete and misleading Form S-4 Amended Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction, which was declared effective by the SEC on October 19, 2020.

6.      The Registration Statement, which recommends that Spring Bank shareholders vote in favor of, among other things, the issuance of Spring Bank common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) the financial projections for Spring Bank and F-Star; (2) the financial analyses performed by Spring Bank's financial advisor, Ladenburg Thalmann & Co. Inc. ("Ladenburg"), in connection with its fairness opinion; and (3) the sales process leading up to the Proposed Transaction.

7.      These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the

subsequent damages occurred in this District, and the Company conducts business in New York

City.[1]

11.     In connection with the acts, conduct and other wrongs alleged in this complaint,

Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the

facilities of the national securities exchange.

## PARTIES

12.     Plaintiff is, and has been at all relevant times hereto, an owner of Spring Bank's

common stock.

13.     Defendant Spring Bank is a clinical-stage biopharmaceutical company that

discovers and develops therapeutics for the treatment of a range of cancers and inflammatory

diseases using its proprietary small molecule nucleotide platform. The Company is incorporated

in Delaware. The Company's common stock trades on the Nasdaq under the ticker symbol,

"SBPH."

14.     Defendant David Arkowitz ("Arkowitz") is a director of the Company.

15.     Defendant Todd Brady ("Brady") is a director of the Company.

16.     Defendant Timothy Clackson ("Clackson") is a director of the Company.

17.     Defendant Martin Driscoll ("Driscoll") is President, Chief Executive Officer

("CEO"), and a director of the Company.

18.     Defendant Kurt M. Eichler ("Eichler") is a director of the Company.

---

[1] For example, the Company reportedly participated in a conference in New York City in 2019. *See, e.g.*, Spring Bank, *Spring Bank Pharmaceuticals at Jefferies 2019 Global Healthcare Conference*, https://ir.springbankpharm.com/events/event-details/spring-bank-pharmaceuticals-jefferies-2019-global-healthcare-conference (last visited Oct. 29, 2020).

19.     Defendant Pamela Klein ("Klein") is a director of the Company.

20.     Defendant Scott Smith ("Smith") is Chairman of the Board of the Company.

21.     Defendants Arkowitz, Brady, Clackson, Driscoll, Eichler, Klein, and Smith are collectively referred to herein as the "Individual Defendants."

22.     Defendants Spring Bank and the Individual Defendants are collectively referred to herein as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

### A.  The Proposed Transaction

23.     On July 29, 2020, Spring Bank and F-star issued a press release announcing that they had entered into a definitive share exchange agreement pursuant to which Spring Bank will, subject to stockholder approval, acquire all of the outstanding share capital of F-star in exchange for newly issued shares of Spring Bank in an all-stock transaction. The press release states, in pertinent part:

**Spring Bank Pharmaceuticals and F-star Therapeutics Agree to Combine to Pursue Mission of Creating Next Generation Immunotherapies**

July 29, 2020 16:27 ET | **Source:** Spring Bank Pharmaceuticals, Inc.

- *Combined company will operate as F-star Therapeutics and advance pipeline of multiple clinical-stage immuno-oncology programs*
- *Combined company expected to have at least $40 million in cash prior to closing*
- *Spring Bank stockholders to receive two separate contingent value rights related to Spring Bank's STING agonist and STING antagonist programs*
- *Companies to host joint conference call on July 30, 2020 at 7:30 a.m. Eastern Time*

HOPKINTON, Mass. and CAMBRIDGE, United Kingdom and CAMBRIDGE, Mass., July 29, 2020 (GLOBE NEWSWIRE) -- Spring Bank Pharmaceuticals, Inc. (Nasdaq: SBPH) ("Spring Bank"), a clinical-stage biopharmaceutical company developing novel therapeutics for oncology and inflammatory diseases, and F-star Therapeutics, Limited ("F-star"), a privately-held clinical-stage biopharmaceutical company focused on transforming the lives of patients with cancer through the

5

development of innovative tetravalent bispecific (mAb$^{2TM}$) antibodies, today announced that the companies have entered into a definitive share exchange agreement pursuant to which Spring Bank will, subject to stockholder approval, acquire all of the outstanding share capital of F-star in exchange for newly issued shares of Spring Bank in an all-stock transaction. The combined company, operating under the name F-star Therapeutics, Inc., will advance its immuno-oncology pipeline of multiple tetravalent bispecific antibody programs, as well as Spring Bank's STING (STimulator of INterferon Gene) agonist, SB 11285, currently in a Phase 1/2 clinical trial.

*      *      *

*"This transaction offers the Spring Bank stockholders of record as of immediately prior to the close of the combination potential future additional value in the form of two contingent value rights ("CVRs") related to our STING agonist and STING antagonist programs. The first CVR represents the right to receive a potential future cash payment of at least $1.00 per share (on a pre-reverse split basis) if the combined company consummates one or more strategic transactions for SB 11285 aggregating at least approximately $18.0 million within a certain period following the closing. The second CVR gives Spring Bank stockholders the right to receive 80% of the net proceeds from a potential development agreement and from one or more strategic transactions related to the STING antagonist research program that are consummated within a certain period following the closing of the combination."*

**Eliot Forster, CEO of F-star, said:** *"We are truly excited about the opportunity created by this proposed combination to further advance our pipeline of novel tetravalent bispecific antibodies, which we believe will be able to address the limitations of current therapies in the field of immuno-oncology. At F-star, we are pioneering a differentiated approach to bispecifics, using a natural human IgG1 antibody format that has already shown early signs of clinical activity, established manufacturing processes and promising safety.*

*"Currently, only a minority of patients realize long-lasting benefit from immunotherapy, so there remains a significant unmet medical need to develop more effective cancer treatment options. We believe this transaction will provide the resources to accelerate F-star's clinical development and generate stockholder value through a pipeline of novel therapies with the potential to improve the lives of patients with difficult to treat cancers."*

By developing medicines that seek to block tumor immune evasion, F-star's goal is to offer patients greater and more durable benefits than current immuno-oncology treatments. Through its proprietary tetravalent, bispecific antibody (mAb$^2$) format, F-star's mission is to generate highly differentiated, best-in-class drug candidates with monoclonal antibody-like manufacturability.

The combined company's pipeline will include:

- FS118, a LAG-3/PD-L1-targeting tetravalent bispecific antibody, currently in Phase 1 development
- FS120, a Phase 1-ready dual T cell agonist tetravalent bispecific antibody targeting OX40 and CD137
- FS222, a conditional agonist targeting CD137 and PD-L1 expected to enter first in human trials in the first quarter of 2021
- SB 11285, a novel IV-administered STING agonist, currently in a Phase 1/2 clinical trial for the treatment of solid tumors
- Additional research programs from the F-star differentiated bispecific technology platform and the potential further development of Spring Bank's STING agonist antibody drug conjugates ("ADCs")

The combined company plans to advance its pipeline through multiple clinical trials, including the following anticipated near-term milestones that offer significant potential value creation for Spring Bank's stockholders:

- Report Phase 1 results from the FS118 program (2020 Q4)
- Update on SB 11285 monotherapy cohorts (2020 Q4)
- Update on accelerated dose titration from the FS120 Phase 1 trial (2021 Q2)
- Initial read out from the SB 11285-atezolizumab combination cohort (2021 H1)
- Initiation of PK/PD expansion cohorts in the FS222 Phase 1 trial (2021 Q4)
- Update on FS118 Phase 2 proof of concept trial (2022 Q1)
- Initiation of FS120 PD-1 combination trial (2022 Q2)
- Update on dose escalation in FS222 Phase 1 (2022 Q2)
- Report FS118 Phase 2 proof of concept readout (2022 Q4)
- Report initiation of tumor specific expansion cohorts in FS222 Phase 1 (2022 Q4)

F-star anticipates raising additional capital at the closing of the proposed combination from current and potential new investors and the combined company expects to have at least $40 million in cash prior to closing. This financing will help fund the further development of the combined company's preclinical and clinical immuno-oncology programs, and the combined company expects to have multiple opportunities to raise non-dilutive capital from existing and future business development collaborations over the next two to three years.

**About the Proposed Combination**

Pursuant to the share exchange agreement, Spring Bank will acquire all of the outstanding share capital of F-star in exchange for the issuance of newly issued shares of Spring Bank common stock upon closing, subject to the satisfaction or waiver of customary closing conditions, including the receipt of the required approval of the Spring Bank stockholders. On a pro forma basis and assuming that the proceeds of the concurrent F-star financing will be $25 million, current Spring

Bank equity holders and F-star equity holders will own approximately 38.8% and 61.2%, respectively, of the combined company calculated on a fully diluted basis using the treasury stock method and, in the case of Spring Bank, excluding out-of-the-money options and warrants. The actual ownership allocation will be subject to adjustment based on Spring Bank's net cash balance at the closing of the transaction, the actual amount raised in the F-star financing and certain other terms set forth in the share exchange agreement. Prior to closing, Spring Bank will seek stockholder approval to effect a reverse stock split of its outstanding common stock so that the combined company satisfies the continued listing requirements of the Nasdaq Capital Market.

In addition to retaining equity ownership of the combined company, Spring Bank stockholders of record as of the close of the combination will have the opportunity to obtain potential future value in the form of two CVRs associated with Spring Bank's ongoing Spring Bank SB 11285 IV clinical program and Spring Bank's STING antagonist research platform. Subject to the terms of the first CVR agreement for the STING agonist clinical program, if one or more strategic transactions are consummated for SB 11285 by the combined company during a period that is the longer of one and a half years following the closing of the combination or one year after the final database lock of the current SB 11285 IV Phase 1a/1b trial, those equity holders of Spring Bank will receive the greater of 25% of the net proceeds from such transactions or $1.00 per share (on a pre-reverse split basis), provided that the aggregate net proceeds are at least approximately $18.0 million. Subject to the terms of the second CVR agreement, if a potential development agreement is consummated and one or more strategic transactions are consummated for the STING antagonist research platform by the combined company during the seven (7)-year period following the closing of the combination, those equity holders of Spring Bank will receive 80% of the net proceeds from such transactions. If Spring Bank enters into a development agreement for the STING antagonist research platform in advance of the closing of the proposed combination, Spring Bank may include certain proceeds from such transaction in its net cash calculation.

The Spring Bank directors and officers have signed support agreements committing them to vote in favor of the transaction. These same parties, as well F-star's key equity holders, directors and officers, have signed lock-up agreements restricting transfers of the combined company's stock (except as to any shares purchased by such holders in the financing closing immediately prior to the business combination) for 180 days post-closing.

The transaction has been approved by the boards of directors of both companies and the equity holders of F-star, who have signed the share exchange agreement. The combined company will be headquartered out of F-star's existing facilities in Cambridge, U.K. and Cambridge, MA. Following closing, which is expected to occur in late 2020, Spring Bank will be re-named F-star Therapeutics, Inc. and is expected to trade on the Nasdaq Capital Market under the ticker symbol "FSTX".

Ladenburg Thalmann & Co. Inc. is acting as exclusive financial advisor and Lowenstein Sandler is serving as legal counsel to Spring Bank. Mintz Levin and Mills & Reeve are serving as legal counsel to F-star.

**Management and Organization**
Effective as of the closing of the transaction, Eliot Forster, Ph.D., MBA, will be the President and Chief Executive Officer of the combined company. Senior members of the current F-star and Spring Bank teams will be asked to become a part of the key leadership team of the combined company. Martin Driscoll, President and Chief Executive Officer of Spring Bank, will not be a member of the leadership team of the combined company.

Effective with the closing of the combination, the board of directors of the combined company will initially consist of eight directors. Of the current Spring Bank board, David Arkowitz MBA, Todd Brady, M.D., Ph.D. and Pamela Klein, M.D., will continue as members of the combined company's board of directors.

**Conference Call Details**
F-star and Spring Bank will host a live conference call and webcast on Thursday, July 30, 2020 at 7:30 a.m. Eastern Time to discuss the proposed transaction. To access the call, please dial +1 (877) 317-6789 (United States) or +1-412-317-6789 (international). To access the call by live audio webcast, please log on to **https://services.choruscall.com/links/sbph200730.html**.

**About Spring Bank Pharmaceuticals**
Spring Bank Pharmaceuticals, Inc. is a clinical-stage biopharmaceutical company engaged in the discovery and development of a novel class of therapeutics using its proprietary small molecule nucleotide platform. The company designs its compounds to selectively target and modulate the activity of specific proteins implicated in various disease states. The company is developing its STING product portfolio with its lead clinical product candidate, SB 11285, an intravenously-administered immunotherapeutic agent for the treatment of selected cancers, its STING antagonist compounds for the treatment of a broad range of inflammatory diseases and its STING agonist ADC program for potential oncology applications. For more information, please visit **www.springbankpharm.com**.

**About F-star Therapeutics**
F-star is a clinical-stage biopharmaceutical company delivering tetravalent bispecific antibodies for a paradigm-shift in cancer therapy. By developing medicines that seek to block tumor immune evasion, the Company's goal is to offer patients greater and more durable benefits than current immuno-oncology treatments. Through its proprietary tetravalent, bispecific antibody (mAb$^{2TM}$) format, F-star's mission is to generate highly differentiated best-in-class drug candidates with monoclonal antibody-like manufacturability. Building on the combined expertise of its world-class management team and scientific leadership,

9

F-star is poised to deliver the next breakthrough immunotherapies for patients with cancer. For more information visit www.f-star.com.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

24.     The Registration Statement omits and/or misrepresents material information concerning: (1) the financial projections for Spring Bank and F-Star; (2) the financial analyses performed by Ladenburg in connection with its fairness opinion; and (3) the sales process leading up to the Proposed Transaction.

25.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Exchange; (ii) Recommendation of the Spring Bank Board; (iii) Spring Bank Reasons for the Exchange; and (iv) Opinion of the Spring Bank Financial Advisor.

26.     Unless and until the material misstatements and omissions (referenced below) are remedied before the November 19, 2020 shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning Spring Bank's and F-star's Financial Projections**

27.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning Spring Bank's and F-star's financial projections.

28.     The Registration Statement provides that, in connection with its fairness opinion, Ladenburg reviewed "relevant financial and operating data furnished to Ladenburg by the management of each of Spring Bank and F-star, respectively" and "[d]iscussed with certain

10

members of the management of Spring Bank the historical and current business operations, financial condition and prospects of Spring Bank[.]"

29.     The Registration Statement, however, fails to disclose Spring Bank's and F-star's financial projections.

30.     The disclosure of the aforementioned projected financial information is material because it would provide the Company's shareholders with a basis to project the Company's and the combined company's future financial performance and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Stock Issuance.

31.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.  Material Omissions Concerning Ladenburg's Financial Analyses

32.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning Ladenburg's financial analyses.

33.     The Registration Statement fails to disclose whether Ladenburg performed financial analyses of Spring Bank. If so, shareholders must be provided a fair summary of those analyses.

34.     With respect to Ladenburg's "*Implied Equity Value*," the Registration Statement fails to disclose how Ladenburg calculated the implied purchase price per share of F-Star common stock.

35.     The valuation methods, underlying assumptions, and key inputs used by Ladenburg in rendering its purported fairness opinion must be fairly disclosed to Spring Bank shareholders. The description of Ladenburg's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Spring Bank shareholders are unable to fully understand Ladenburg's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

36.     The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

37.     The Registration Statement provides that, by "early May 2020, 33 companies had submitted indications of interest in a transaction with Spring Bank, including F-star."

38.     The Registration Statement, however, fails to adequately disclose the terms and values of all indications of interest, proposals, and/or term sheets between Spring Bank and potentially interested counterparties.

39.     The Registration Statement provides that, during the sales process, Spring Bank received a "proposal . . . from a third party relating to the development of Spring Bank's STING antagonist program" with such significance that, "[o]n July 10, 2020, [Defendant CEO] Mr. Driscoll and [F-star CEO] Dr. Forster spoke by telephone regarding th[is] proposal[.]"

40.     The Registration Statement, however, fails to adequately disclose the nature and content of Defendant Driscoll's discussion with Dr. Forster on July 10, 2020 concerning the

aforementioned third-party proposal.

41.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

44.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

45.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Stock Issuance.

46.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

14

herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

52.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Stock Issuance, unless and until Defendants disclose and disseminate the material

information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act,

and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including

counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 29, 2020                                  Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*